IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON SEALY, | |
| **Plaintiff,** | |
| v. | Case No. 3:22-CV-02349-SPM |
| CHASE PARTAIN, et al., | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion to Dismiss (Doc. 59) filed by Defendants Chase Partain; Devon Elliot; the City of McLeansboro, Illinois; the Hamilton County Sheriff's Office; and Hamilton County. Having been fully informed of the issues presented, this Court **GRANTS in part and DENIES in part** the Defendants' Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff Aaron Sealy's Second Amended Complaint (Doc. 47), which the Court views as true for purposes of this Motion. Sealy was arrested by Defendant Partain on October 19, 2021. (*See* Doc. 49, ¶ 10). Both Partain and Defendant Elliot (who arrived to assist with Sealy's arrest) searched Sealy for weapons and found that he had none. (*See id.*, ¶¶ 11–13). Sealy was transported to the Hamilton County Sheriff's Office, searched again, and seated in a wooden chair with his hands handcuffed to the adjacent wall. (*See id.*, ¶¶ 14–17). After stating that the handcuffs "were bothering him," Sealy pulled on the handcuffs

at approximately 12:17 a.m. on October 10, 2021 and the handcuffs "became separated from the wall." (*See id.*, ¶¶ 18, 20). "Soon after Plaintiff freed himself from the wall, Defendant Partain unholstered his firearm and discharged three rounds in Plaintiff's direction, and Defendant Elliot unholstered his firearm and discharged three rounds in Plaintiff's direction." (*See id.*, ¶ 21). Sealy was struck in the abdomen by one of the rounds and subsequently ordered to roll onto his stomach to be handcuffed for medical transport. (*See id.*, ¶¶ 23, 25–26). Sealy was transported to Hamilton County Memorial Hospital in order to be stabilized for transport to the Emergency Department at Carbondale Memorial Trauma. (*See id.*, ¶ 29). Sealy was not able to be transported in the first helicopter allegedly because "law enforcement refused to allow Plaintiff to be transported for emergency medical care without armed, police guard." (*See id.*, ¶ 31). A second helicopter was dispatched to transport Sealy to Carbondale Memorial Trauma, where he subsequently received medical case. (*See id.*, ¶¶ 33–35).

Sealy's original Complaint (Doc. 1) was filed on October 11, 2022 and contained five claims: violation of the Fourth Amendment by Partain under 42 U.S.C. § 1983 (Count I); violation of the Fourth Amendment by Elliot under § 1983 (Count II); willful and wanton conduct by the City of McLeansboro (Count III); willful and wanton conduct by the Hamilton County Sheriff's Office (Count IV); and indemnification of the City of McLeansboro and Hamilton County (Count V). The Defendants filed an Answer (Doc. 16) on December 1, 2022 and a Motion to Dismiss Counts II, IV, and V (Doc. 20) on January 9, 2023. Sealy filed an Amended Complaint (Doc. 25) on January 25, 2023 and the Defendants filed a second Answer (Doc. 26) on

February 9, 2023 and a renewed Motion to Dismiss Counts II, IV, and V (Doc. 27) on February 23, 2023. On September 21, 2023, the Court granted in part and denied in part the Defendants' Motion to Dismiss, dismissing Count II without prejudice and Count IV without prejudice except as to delay in medical treatment. (*See* Doc. 39). The Court granted Sealy leave to file a second amended complaint on October 3, 2023; Sealy filed it that same day. (*See* Docs. 46, 47). The Defendants filed another Motion to Dismiss on December 7, 2024 to which Sealy responded on January 5, 2024. (*See* Doc. 59). The Defendants also filed a Reply on January 22, 2024. (*See* Doc. 64).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

### I. Violation of the Fourth Amendment Under 42 U.S.C. § 1983; Against Partain & Elliot (Counts I & II)

Sealy's first two claims argue that Partain's (Count I) and Elliot's (Count II) use of deadly force against him was unreasonable and violated his Fourth Amendment rights. (*See* Doc. 47, ¶¶ 37–40; 42–46). As the claims against both Partain and Elliot are identical, the Court addresses them together here.

The Defendants take note that, in his original Complaint and First Amended Complaint, Sealy specifically stated that, after his handcuffs detached from the wall, he removed a fire extinguisher from the wall and sprayed it at Partain and Elliot. (*See* Doc. 1, ¶¶ 20–23; Doc. 25, ¶¶ 20–23). They argue that, by admitting in his First Amended Complaint that he sprayed Partain and Elliot with a fire extinguisher, Sealy "plead himself out of court" and is now trying to "plead himself back into court." (*See* Doc. 59, Ex. A, p. 5). The Defendants also argue that Sealy's Fourth Amendment excessive force claims against Partain and Elliot remain barred by the *Heck vs. Humphrey*, 512 U.S. 477 (1994), prohibition preventing a plaintiff from using a § 1983

case to question or challenge his or her own conviction. *See id.* at 486–87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

They argue that Sealy "makes no new allegations, which offer a logical way to reconcile his excessive force claim with his aggravated battery conviction. Instead, he attempts a slight [sic] of hand, erasing certain 'offending' statements, which undermine the validity of his aggravated battery convictions and guilty pleas." (Doc. 59, Ex. A, p. 5). As "Sealy now claims that he never used the fire extinguisher to attack the officers and instead alleges that the officers shot him after he 'freed himself from the wall,'" the Defendants argue that "[t]o accept Sealy's version of the incident . . . means that he did not commit the offense of aggravated battery and the officers had absolutely no justification for discharging their firearms." (*Id.*). They also state that Sealy admitted in his plea hearing that he sprayed the fire extinguisher into Partain's and Elliot's eyes. (*See id.*, p. 7 (citing *id.*, Ex. C)); *see also* Hr'g Tr., *State of Illinois v. Sealy*, No. 2021-CF-44 (Ill. Cir. Ct. Oct. 19, 2022). Namely, Sealy (through counsel) did not object to the following at his plea hearing:

> Subsequently, the defendant in Case No. 20-CF-29 . . . was able to work a restraint loose, was able to look up . . . and see a fire extinguisher, took the fire extinguisher, and being told to put the fire extinguisher down, . . . began to discharge the fire extinguisher approximately ten to fifteen feet into the eyes and face of Deputy Devon Elliot and Officer

> Chase Partain, wherein he committed an aggravated battery in terms of spraying them. Both officers had trouble seeing and breathing for a period [of] time afterwards. Therefore, being charged, after spraying the powder chemicals in their eyes, face and nose while being authorized in their official execution of their duties, with aggravated battery.

(Doc. 59, Ex. A, p. 7 (citing *id.*, Ex. C)); *see* Hr'g Tr., *State of Illinois v. Sealy*, No. 2021-CF-44 (Ill. Cir. Ct. Oct. 19, 2022).

They argue that "[a] judgment in favor of Sealy would obviously call into question his criminal conviction for aggravated battery and the factual basis for his conviction." (Doc. 59, Ex. A, p. 8). The Defendants argue that Sealy must prove that Partain and Elliot used unreasonable force, but that "factual basis to which Sealy admitted . . . precludes him from alleging or arguing that he did not pose an immediate threat to the safety of the officers and likewise precludes him from claiming that [his actions] did not constitute active resistance or an attempt to evade arrest." (*Id.*, p. 9). The Defendants separately argue that Sealy's excessive force claims are barred by collateral estoppel because "Sealy is re-litigating the state court judgment entered on his plea of guilty to two counts of aggravated battery." (*Id.*, p. 11).

In his Response, Sealy argues that "[j]ust because [he] pled guilty to aggravated battery to a police officer does not mean, as a matter of law, that [he] cannot prevail in this suit for excessive force." (Doc. 61, p. 4). Sealy cites a variety of Seventh Circuit authority indicating that he can proceed with a § 1983 Fourth Amendment excessive force claim after pleading guilty to aggravated assault. (*See id.* (citing *McCann v. Neilsen*, 466 F.3d 619, 622–23 (7th Cir. 2006); *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006);

*Evans v. Pokson*, 603 F.3d 362, 364 (7th Cir. 2010))). He notes that he is "allowed to remain 'agnostic' in his pleadings about the findings in a criminal proceeding (he doesn't have to confess), but he cannot deny or call into question those prior findings." (*Id.*, p. 6 (citing *Moore v. Mahone*, 652 F.3d 722, 724 (7th Cir. 2011))). He argues that "[t]here is 'nothing inherently contradictory' about being convicted of aggravated battery and prevailing in a subsequent civil suit alleging the battered officers used excessive force by using deadly force in response to being battered." (*Id.*, p. 7 (citing *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016))). He states that he did not admit or imply "that his actions caused Defendants' [sic] to reasonably believe they were in *imminent danger of death or serious bodily harm*" but rather "admitted to committing a battery on them by spraying them with fire extinguisher chemicals, and it will be up to jury to decide if Defendants' responses in shooting at him three times each, was reasonable." (*Id.*, p. 8); *see also Gilbert*, 512 F.3d at 901 ("A contention that a guard struck back after being hit is compatible with *Heck*. Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong.").

In their Reply, the Defendants emphasize that "where the officer has probable cause to believe a suspect poses a threat of serious physical harm, either to the officer or the others, it is not unconstitutional or unreasonable to prevent his escape by using deadly force." (Doc. 64, p. 2 (quoting *Tennessee vs. Garner*, 471 U.S. 1, 11–12 (1985)). They argue that Sealy attempts to narrow the applicable caselaw to "whether it is reasonable, under the Fourth Amendment, for officers to shoot an individual who

sprays them with fire extinguisher chemicals," (Doc. 64, p. 2 (citing Doc. 61, p. 7)) bu that standard is, instead, that "deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." (Doc. 64, p. 2 (citing *Garner*, 471 U.S. at 11–12)).

Regarding the Defendants' collateral estoppel argument, Sealy argues that this doctrine "does not bar Plaintiff's excessive force claims in this case because the issue decided in the prior adjudication is not identical with the one presented in this suit"; in other words, he argues that all that was decided in the criminal case was whether or not Sealy committed aggravated battery of Partain and Elliot, not whether or not their deployment of deadly force was reasonable. (*Id.*, p. 9).

Sealy's argument is thus that he can have committed aggravated assault while Partain and Elliot also used unreasonable deadly force; he argues that these propositions are not mutually exclusive and both can be true simultaneously. This is unquestionably accurate—it would be absurd to bar plaintiffs from seeking damages pursuant to § 1983 merely because they pleaded guilty to a crime. *See Gilbert*, 512 F.3d at 901 (stating that *Heck* is not incompatible with a guard striking back after being hit). As this Court stated in the Order on the Defendants' motion to dismiss Sealy's First Amended Complaint (Doc. 25), "a § 1983 claim challenging the reasonableness of force used 'may be litigated without transgressing *Heck* . . .' even though '[p]ublic officials who use force reasonably necessary to subdue an aggressor are not liable on the merits.'" (Doc. 39 (citing *Gilbert* at 901)).

That being said, "[j]ust as it is true that a § 1983 excessive force claim after an assault conviction is not necessarily barred by *Heck*, it is also true that it is not

Page 8 of 15

necessarily free from *Heck*." *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006) (citing *Cunningham v. Gates*, 312 F.3d 1148, 1154–55 (9th Cir. 2002)). "The excessive force claim and the conviction may be so interrelated factually as to bar the § 1983 claim." *Id.* (citing *Cunningham* at 1154–55). Regarding collateral estoppel, Sealy is incorrect that there are different issues at play in the two cases at issue. The criminal case was based around whether or not the government presented evidence that Sealy committed aggravated battery against Partain and Elliot. The instant case is related to whether or not Partain and Elliot's *response* to the battery was reasonable. However, the critical problem with Sealy's argument is that his conviction for aggravated battery provides a critical element to the Defendants' argument that their use of deadly force was reasonable.

First of all, Sealy's removal of the language describing his discharge of the fire extinguisher does not eliminate it from contention entirely. As the Defendants note, this Court may take judicial notice of "matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (citations omitted). Sealy attempts to dodge *Heck* by removing language in his complaint stating that "[a]t the time Defendants Partain and Elliot fired their service weapons at Plaintiff, Plaintiff did not pose an imminent threat of death or great bodily harm to any individual." (Doc. 25).

Illinois law defines aggravated battery as when an individual knowingly "[c]auses great bodily harm or permanent disability or disfigurement to an individual whom the person knows to be a peace officer." 720 Ill. Comp. Stat. 5/12-3.05(a)(3).

Additionally, in Illinois, "[a] police officer may use deadly force when another person presents an immediate danger of serious harm to the officer or others." *Soriano v. Town of Cicero*, 521 F. App'x 565, 568 (7th Cir. 2013) (citing *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir.1993)). Since he pleaded guilty to the aggravated battery charge, he admits that he *knowingly caused serious bodily harm* to both Partain and Elliot by intentionally spraying powdered fire retardant in their eyes and mouths, which surpasses the "presents an immediate danger" standard required for deadly force in Illinois. Considering the fact that police officers are often called to make "split-second judgments," this indicates that Sealy is unable to allege that the officers' use of force was unreasonable, thus entitling him to relief. *See Soriano*, 521 F. App'x at 568 ("The determination of the reasonableness of force used must allow for the fact that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))). Therefore, Sealy's guilty plea to aggravated battery *by definition* establishes that he intended to cause great bodily harm and knowingly caused great bodily harm to Partain and Elliot. Mere removal of language in his Second Amended Complaint does not remove his plea and conviction from existence.

While Sealy claims that he is challenging the *level* of force used by Partain and Elliot (i.e., the number of rounds fired by Partain and Elliot, *see* Doc. 61, p. 8), he cannot overcome the fact that he pleaded guilty to knowingly causing serious bodily harm to Partain and Elliot. As in *Tolliver*, in which the plaintiff tried to argue that a different set of facts applied than those recorded in his conviction for aggravated

battery, if Sealy were to prevail in the instant suit, it would contravene material elements of his criminal conviction. (*See* Doc. 59, Ex. A, p. 8). Thus, while Sealy is correct that *Heck* does not explicitly bar all § 1983 excessive force suits when the plaintiff was convicted, Counts I and II cannot overcome *Heck*, and, therefore, must be dismissed.

## II. Willful and Wanton Conduct Against the City of McLeansboro and the Hamilton County Sheriff's Office (Counts III & IV)

Sealy next alleges willful and wanton conduct claims against the City of McLeansboro (Partain's employer) and the Hamilton County Sheriff's Office (Elliot's employer). (*See* Doc. 47). He argues that both entities neglected their duty to ensure their employees refrained from willful and wanton conduct included when each "[u]sed deadly force when it was unreasonable to do so; . . . [a]cted inconsistently with and/or violated applicable law enforcement standards [related] to deadly force; . . . [d]elayed medical treatment for Plaintiff by preventing his transport to a hospital; . . . [w]as otherwise willful and wanton." (*See id.*, ¶¶ 51, 56).

The Defendants argue that both *Heck* and collateral estoppel bar Sealy's claims against the City of McLeansboro and Hamilton County. (*See* Doc. 59, Ex. A, p. 10, 11–13). They argue that Illinois' "embrace" of the rule in *Heck* means that his state law claims should be dismissed. (*See id.*, p. 10). They also argue that Sealy is attempting to relitigate his criminal conviction and that he had the opportunity to contest his charges and chose not to do so. (*See id.*, p. 12). The Defendants also raise the argument that the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/4-105, immunizes public employees for tort

liability as related to obtaining medical care except where the failure to do so was willful and wanton. (*See* Doc. 59, Ex. A, p. 13).

Sealy argues in response that "*Heck* is a rule of federal law applying to federal causes of actions [sic] challenging the validity of state convictions." (Doc. 61, p. 8). He claims that the Illinois Supreme Court has not addressed whether *Heck* applies to civil cases. (*See id.* (citing *Starks vs. City of Waukegan*, 946 F. Supp. 2d, 780, 804 (N.D. Ill., May 21, 2013); *Lieberman vs. Liberty Healthcare Corp.*, 408 Ill. App 3d 1102, 1111, 948 N.E. 2d 1100, 1107 (4th Dist. 2011))). Moreover, regarding collateral estoppel, he argues that "[n]owhere in the state court proceeding did the court decide that the officers' use of force was reasonable, that they acted consistently with applicable law enforcement standards as they relate to the use of deadly force, and that they did not delay providing medical treatment for Plaintiff." (Doc. 61, p. 10). He also argues that the Defendants' conduct which delayed his medical care was willful and wanton and that the tort immunity argued by the Defendants is an affirmative defense and should not result in dismissal at the pleading stage. (*See id.*, p. 11–13 (citations omitted)).

While Sealy is correct that the Illinois Supreme Court has not addressed the issue, it has been established in this District that *Heck* applies with equal force to federal and Illinois state claims. *See Lieberman v. Liberty Healthcare Corp.*, 948 N.E.2d 1100, 1107 (Ill. App. Ct. 2011); *Johnson v. Chibicki*, No. 11 C 794, 2011 WL 5868010, at *2 (N.D. Ill. Nov. 21, 2011) (citing *Lieberman* at 1107). Like Counts I and II, *see supra*, Sealy's excessive force claims are barred both by *Heck* and by collateral

estoppel, as the issue of whether Sealy's actions precipitated the officers' deadly force is established by Sealy's guilty plea to aggravated battery.

Regarding Sealy's claim that the delay in his medical treatment was willful and wanton conduct, "[u]nder Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010) (citing *Krywin v. Chi. Transit Auth.*, 909 N.E.2d 887, 890 (Ill. App. Ct. 2009)). "A willful and wanton claim has the additional requirement that the breach be not merely negligent, but with 'conscious disregard for the welfare of the plaintiff.'" *Id.* (citing *Ortega–Piron ex rel. Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. App. Ct. 2004)). Sealy has pleaded that Partain and Elliot were aware of his injuries (as one of them had shot him), but that they handcuffed him and would not permit him to be transported to Carbondale Memorial Trauma without an armed guard. While the Defendants argue that his allegations do not surmount the bar of Federal Rule of Civil Procedure 8, the Court finds that Sealy has pleaded the minimum required facts for this claim.

For these reasons, Counts III and IV must be dismissed with respect to Sealy's deadly force claims. The claims related to delay of medical treatment survive the Defendants' Motion to Dismiss.

## III. Indemnification of the City of McLeansboro and Hamilton County (Count V)

Sealy argues in Count V that, because Partain and Elliot were acting within the scope of their respective employment by the City of McLeansboro and Hamilton County, these two entities must be indemnified. (*See* Doc. 47, ¶¶ 58–62). The Defendants argue that, because Counts I–IV must be dismissed, Count V should be dismissed, as well. (*See* Doc. 59, Ex. A, p. 14). Sealy merely argues that Count V survives because Counts I–IV survive. (*See* Doc. 61, p. 13).

Here, the Court has determined that Counts I–IV must be dismissed (with the exception of the delay of medical treatment claims in Counts III & IV). Because that claim survives, Count V also survives.

### Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss (Doc. 59) is **GRANTED in part and DENIED in part**. Counts I, II, III, and IV are **DISMISSED without prejudice** for failure to state a claim on which relief may be granted with the exception of the delay of medical treatment claims in Counts III and IV. While the Court is reticent to do so, the Court grants Sealy thirty (30) days (no later than February 22, 2024) to submit a third amended complaint which includes a viable federal cause of action. Sealy is cautioned that the Court will not continue to entertain additional amended pleadings beyond this point.

**IT IS SO ORDERED.**

**DATED: January 23, 2024**

**s/ *Stephen P. McGlynn*** 
**STEPHEN P. McGLYNN** 
**U.S. District Judge**
